UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PEDRO ALBERTO MONTERROSO NAVAS                CIVIL ACTION

VERSUS                                        NO. 18-6846

JPCC/CORRECT HEALTH ET AL.                    SECTION "F" (2)

## ORDER GRANTING MOTION TO AMEND; REPORT AND RECOMMENDATION

Plaintiff, Pedro Alberto Monterroso Navas ("Monterroso") is a Guatemalan national who has been incarcerated in the Jefferson Parish Correctional Center ("JPCC") in Gretna, Louisiana, as a pretrial detainee facing a murder charge for more than four (4) years, commencing two (2) weeks after he arrived illegally in the United States in 2014. Record Doc. Nos. 1 at pp. 14-15; 20 at p. 4. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983. Plaintiff named JPCC/Correct Health, which has made its appearance in its proper name, CorrectHealth Jefferson, LLC, Record Doc. Nos. 16, 19; Deputy Chief Sue Ellen Monfra; Medical Administrator Jean Lovett; Medical Assistant Skye Noble; Homicide Detective Rhonda Goff; Narcotics Detective Julio Alvarado; the Jefferson Parish District Attorney; and Assistant District Attorney Kellie Rish as defendants.

Monterroso asserts the following five kinds of claims arising from his incarceration in JPCC since his arrest on July 18, 2014: (1) He received inadequate medical care for various conditions, including a ruptured ear drum suffered when he was assaulted by other inmates.(2) JPCC personnel failed to protect him from being attacked by other inmates,

first on September 3, 2017, when he suffered the ear drum injury, and again on February 21, 2018, when he was beaten by three inmates. (3) Jail personnel have interfered with his outgoing mail, including to this court, his indigent defender and the Guatemalan consulate. (4) Defendants have violated his rights in connection with his pending and delayed criminal proceedings. (5) He has been deprived of books and educational opportunities.

He seeks damages, his release from incarceration and injunctive relief, including "to be sent soon (sic) as possible to [a] federal immigration facility (ICE custody)" and "to be restored the communication with my children." Record Doc. No. 1 at p. 6 (Complaint at ¶ V).

On September 21, 2018, defendants CorrectHealth Jefferson, LLC, Jean Lovett and Skye Noble filed a motion to dismiss for failure to state a claim. Record Doc. No. 19. On October 5, 2018, defendant Assistant District Attorney Kellie Rish also filed a motion to dismiss for failure to state a claim. Record Doc. No. 22. Plaintiff filed an untimely response to these motions on January 14, 2019. Record Doc. No. 35.

On October 20 and November 27, 2018, I conducted telephone conferences in this matter. Participating were plaintiff pro se; a Spanish interpreter named Daphne Enclard; and Jeffrey Martiny, Kyle Kirsch, Madison Walker and Darren Allemand, counsel for defendants. The interpreter was sworn, and plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

On December 20, 2018, plaintiff filed a motion to amend, Record Doc. No. 34, which expounds upon his previously asserted allegations, but adds no new causes of action. For purposes of this report and recommendation, this motion is **GRANTED**.

## THE RECORD

The first hearing on October 20, 2018, was terminated by me after introductory testimony only, when plaintiff expressed a desire for assistance by a Spanish interpreter and difficulty hearing and understanding the court's questions because of his eardrum condition. The second hearing on November 27, 2018, was conducted with the assistance of an interpreter, who was located and provided by the office of the Sheriff of Jefferson Parish, who is responsible for JPCC operations.

As to his medical care claim, plaintiff's written submissions state that he entered the JPCC on July 18, 2014 "with a small wound on the skin . . . [where he had] surgery with metal removed." Record Doc. No. 20 at p. 11. Monterroso states that "the JPCC medical department gave instructions . . . to give [him] medication for infection, pain, and [to] daily cleanse [the wound]." Id. He alleges that "sometimes" the medical personnel "deliberately" did not follow those instructions, and as a result, his "leg became . . . infected, [leaking pus, and his] . . . bone became visible." Id. at p. 12. Plaintiff states that he was exposed to unsanitary conditions and the risk of losing his leg because of these circumstances. Id. at p. 11. Plaintiff also writes that he has been suffering from a "respiratory problem" and is "spitting all the time." He alleges that "the treatment . . . [has been] ineffective [and has afforded him only] temporary relief."

Plaintiff's written submissions further state that he suffered a broken eardrum when he was allegedly attacked by another inmate on September 3, 2017. Record Doc. No. 20 at p. 7. Plaintiff claims that a doctor told him that he needed to see a specialist, but that despite his requests to be seen earlier, he was not taken to a specialist until January 24, 2018. Id. Monterroso states in his written submissions that "the specialist said that I will lose the capacity to hear in the future gradually." Id.

During the November 27th Spears hearing, Monterroso testified that when he was first incarcerated at JPCC, in June 2014, he had "the same cut and wound" from when he had "surgery back in [Guatemala]," and he "still has that injury now." He alleges that he "didn't receive the right care" for this wound, even though he "complained . . . , no one paid attention." Plaintiff testified that the wound "became ripe and you could see the bone." He testified that he suffered from this leg condition from July 2014 - January 2015, when he "received the first surgery to remove the metal plate" in his leg. Plaintiff testified that his last surgery took place "approximately July 2015," and that it got better "because he spent . . . months in the ICU . . . from January to April of 2015 . . . at University Medical Center in New Orleans." His medical records reflect that he had surgical procedures on April 30, May 22, and June 23, 2015. His records further reflect that he had a follow-up appointment on December 2, 2015, to check his progress and to discuss removal of an ABX spacer in his leg, and that he was referred to University Medical Center in New Orleans for an orthopaedic appointment on December 7, 2015. His medical records reflect that he was given a walker to use from April 11 to August 4, 2016. Finally, on August 11, 2016, he had

another follow-up appointment, at which he apparently "appear[ed] well, [and had a] steady gait." The medical records reflect that it was recommended that he be moved back into the regular jail tier from the medical tier.

Plaintiff further testified, and his medical records confirm, that on September 3, 2017, he was "attacked by another inmate . . . [that resulted in] a broken eardrum." He testified that he "was given some pills for the pain . . . , [and was told that he would] see the doctor the next day." Plaintiff alleges, and his medical records confirm, that he was "suffering . . . pain . . . [from] headaches and his ear." He further testified, and his medical records confirm, that he saw a doctor "on September 19, 2017 . . . at JPCC. . . [and she said that] he needed to see the specialist as soon as possible." Monterroso testified that even though "he made multiple . . . phone calls . . . and completed medical forms . . . to complain about his ear," he was "never taken to the specialist in 2017." He alleges that one request in particular was denied "on October 13, 2017," but that he "saw the doctor again on October 17, 2017," which his medical records confirm, and again was told that "he had to see the specialist." He testified that he saw the doctor again on November 27, 2017, and she "told me to see the specialist again." Plaintiff testified he sent "a letter to his lawyer on December 8, 2017 to say that [he] needed medical attention," but he never received a response. Monterroso testified that he "saw the specialist four months later . . . on January 24, 2018 . . . at LSU (University Medical Center)." Despite having seen the specialist, Monterroso testified that he "hasn't gotten better . . . [and he] continues to have headaches and earaches." Plaintiff testified that "they've given me medication, . . . antibiotics . . . for

pain and infection . . . every day." Plaintiff also testified that he is currently receiving this medication.

Monterroso also testified that he has "upper-respiratory problems" and that he is "always spitting" and "coughing a lot." Plaintiff confirmed that he is receiving medication for these conditions.          When asked what claims he is making against Skye Noble, he testified that he brought a claim against her because she is "in charge of the medical staff." As to defendant Jean Lovett, plaintiff testified that he brought this claim because Lovett "was an administrator in the medical department." Plaintiff testified that he does not know if these individuals were directly or personally involved.

As to the attacks against him by other inmates, plaintiff's written submissions allege that "on September 3, 2017, I [along with] . . . two [Hispanic] inmates . . . was [the] victim of [an] attack at [the] hands of [an]other inmate." Record Doc. No. 20 at p. 4. Plaintiff writes that he and the other two inmates were injured in the attack. Id. He writes that "the deputy [knew] . . . what was happening . . . [because she knew] the attack was coming . . . in advance." Plaintiff alleges that the deputy "was unable to provide safety . . . [or] stop the attack." Id. "The female deputy was threaten[ed] [by other] inmates . . . [and when she] call[ed] for assistance," Monterroso writes that he was bleeding and his eardrum was broken. Id. at p. 5. Months later, in the week of February 5, 2018, Monterroso writes that "some inmates had start[ed] to say that . . . [there were] many [Hispanic people] in the dormitory . . . and that we must pay [five dollars a] week . . . or . . . commissary food . . . or a razor to avoid [being] attacked." Id. Monterroso writes that he viewed these threats as

6

"extortion," but that "JPCC took [action] against such [people] and removed the [people extorting him and the other inmates]." Id.

 In his testimony at the November 27th Spears hearing, Monterroso stated that he "blames the guard, Dixon, [because] she saw that they were trying to fight him and she didn't do anything . . . because she thought she was threatened." (emphasis added). He testified that he had "no previous problems" with Samuel Davis, the inmate who attacked him. Monterroso testified that on the day of the incident, he was "preparing for the daily Bible study, when Davis went and told another inmate [with a Hispanic name] to leave the dormitory." He testified that he was "in the corner of cell number six, and stayed there and told his [Hispanic] friends not to fight. But one person in cell number seven told Samuel Davis to attack them. Then he attacked his two friends, and they were injured and bleeding. . . . [Monterroso then] . . . told them not to fight and get away because they were bleeding. . . . Samuel Davis attacked [him] and threw [him] on the floor . . . and didn't let [him] defend [himself]." Monterroso testified that Dixon "was just staring" at the fight, and was "observing and listening to the inmates on the other side who told her not to stop the fight." He testified further that "the fight lasted about five minutes . . . Dixon called for backup . . . [and] other guards came." Monterroso testified that he has had no problems with Davis since the incident.

 When asked about his claims against Chief Sue Ellen Monfra, plaintiff responded that "she is charge of the jail and everything that happens there." Plaintiff testified that he named her as a defendant because she "was in charge of the jail."

Concerning his complaints that defendants tampered with his outgoing mail, plaintiff alleges in his written submissions that he has been "writing letters to seek external legal help" about his conviction, because "[he has been in jail] four years . . . with [no] resolution." He writes that he has "sent letters . . . to [his lawyer], to the consulate, to [the Eastern District of Louisiana], and some other institutions, but very often [the letters have] been open[ed] and sent back as . . . undeliverable, wrong address." Monterroso writes that he "complain[ed] about this," but "the administration respon[ded that there was] "no violation [articulated] . . . because . . . supposedly . . . [the letters were] legal mail."

During the November 27th Spears hearing, Monterroso testified that he "sent multiple letters to the consulate, to his lawyer . . . [and] to [the Eastern District of Louisiana] requesting help, and they never went out." He was "seeking help especially for his ears, and because [he has spent] a lot of time in jail, and is waiting and suffering." He testified that he believes that "when the jail knows that he is sending letters making claims, they are not letting the letters leave the jail." He testified that he would like "to receive [a] notification that [the court] has received the letters."

Monterroso's numerous complaints about his pending criminal proceedings include allegations that his constitutional rights have been violated in a myriad of ways. For example, his written submissions make allegations that during his initial interrogation after his arrest, he was not read his rights and was not informed of his "right to consular access." Record Doc. No. 20 at p. 23. Plaintiff alleges that he requested a lawyer "several times," but that the detectives did not honor his request, allegedly saying that such a right was only

8

available "in court." Id. at 23-24. He further alleges that the detectives made comments about his children and the conditions of JPCC in an attempt to secure his cooperation. Id. at 24-25. Monterroso writes that "all . . . statements . . . have been obtained . . . illegally, unlawful[ly] . . . [and the detectives have] distort[ed] the truth." Id. at 25.

Regarding Assistant District Attorney Kellie Rish, plaintiff writes that she has "been in contact frequently, according to the word of my [lawyer ] . . .  and her own words . . . with the victim's family and my children." Id. at p. 27. Monterroso alleges that Rish has "manipulat[]ed [his children] . . . through third people . . ., mostly his little boys, whom (sic) did not . . . witness . . . the incident . . . [to use their statements] as evidence and witness testimony. Id. at p. 28. Monterroso alleges that "the declaration of the members of the family of the victim have been obtained in exchange for . . .  obtain[ing] legal status, [and to be] protected in [the United States]." Id. He alleges that his case has been "knowingly" and "consciously delayed" with "[no] resolution, prolonging the deprivation of [his] rights." Id. Monterroso further alleges that since Rish "offer[ed] . . . the plea bargain . . . [she has treated him] as guilty, when the law provide[s] that the accused is considered innocent until [proven guilty]." Id. at p. 30. In a "supplement/petition" filed on March 15, 2019, Record Doc. No. 38, plaintiff complains extensively about the allegedly prejudicial "other acts" evidence the district attorney intends to introduce against him at trial, including incidents of domestic violence against his wife, his siblings and his children.

As to his own lawyer, Monterroso stated that during plea bargain discussions, his "legal assistance . . . [was] insufficient." Id. at p. 31. He alleges that his lawyer was not

properly trained to know how plaintiff's status as an illegal immigrant affected his criminal proceedings. Id. Plaintiff also alleges that Assistant District Attorney Rish "offer[ed an] unreasonable plea bargain . . . offering [a] 40 year sentence." Id. He also alleges that he was not provided with full discovery. Id.

At the November 27th Spears hearing, Monterroso testified that Rish "wants him to die in jail." He testified that his trial was set for January 23, 2019, but the District Attorney's counsel Allemand clarified that that date referred to a motion hearing date, and the trial was not scheduled for that date.  Plaintiff testified that detective Julio Alvarado said that "he was only there as an interpreter, but he was the one who interviewed [plaintiff]." When asked why he was suing Rhonda Goff, plaintiff testified that Goff was "in charge of the criminal investigation," and she, along with Julio Alvarado, " took him in the bathroom to threaten him."

As to his claim that he has not been provided with books or educational materials, plaintiff wrote that he has been subjected to a "depriv[ation] of . . . education over (4) four years like a form of slavery . . . [even though] the Constitution forbids all kinds of slavery . . . [he has] been subjected to the slavery of . . . ignorance." Record Doc. No. 20 at p. 29.

At the Spears hearing, Monterroso testfied that he "asked his friends to send him books [so that he could learn] English, but [he] never received them. They were . . . declined." He testified that he has been in jail for four years, but has received no educational "classes or anything." He testified that he is represented by an attorney in his criminal case.

# ANALYSIS

## I.    STANDARDS OF REVIEW

The current procedural posture of this case requires the court to apply two different but closely related legal standards to evaluate plaintiff's claims. First, the court applies the well-established screening standards emanating from 28 U.S.C. § 1915A to determine if Monterroso's claims are legally frivolous or state a cognizable Section 1983 claim. Second, Rule 12(b)(6) standards apply to the pending motions to dismiss.

## (A) SCREENING STANDARDS

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting

former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S.

25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a

claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

(B) STANDARD FOR MOTIONS TO DISMISS

Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. The Supreme Court recently clarified the standard for a motion to dismiss under Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 796 (5th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007))).

"The Supreme Court's decisions in Iqbal and Twombly . . . did not alter the long-standing requirement that when evaluating a motion to dismiss under Rule 12(b)(6), a court must 'accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." Id. at 803 n.44 (quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)) (internal quotation omitted).

The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments. Walch v. Adjutant Gen.'s Dep't, 553 F.3d 289, 293 (5th Cir. 2008). Defendants' motions address only the sufficiency of the allegations of the complaint as a

matter of law, not whether the allegations are true. Thus, for purposes of these motions, the court accepts "all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs.'" Jabary v. City of Allen, 2013 WL 6153241, at *3 (5th Cir. Nov. 25, 2013) (quoting Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008)). "With respect to any well-pleaded allegations 'a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 664).

\* \* \*

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims, or under Heck v. Humphrey, 512 U.S. 477 (1994), and the motions to dismiss should be granted. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

## II.  MEDICAL CARE

Monterroso was a pretrial detainee at all relevant times about which he complains. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

care unless the failure to provide it was reasonably related to a legitimate government interest. <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir. 1990), <u>abrogated on other groudns as recognized in Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650. The Fifth Circuit explained that for the <u>Bell</u> "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id.</u> at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in <u>Estelle v. Gamble</u>,

16

429 U.S. 97, 104 (1976), will apply. Shepherd v. Dallas Cnty., 591 F.3d 445, 452 (5th Cir.

2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare,

74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114

F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim

for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates

that there has been "deliberate indifference to serious medical needs" by prison officials or

other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of

pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed

by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83

(1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate indifference" means that

a prison official is liable "only if he knows that the inmates face a substantial risk of serious

harm and [he] disregards that risk by failing to take reasonable measures to abate it."

Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth

Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has

violated the Eighth Amendment. If the court finds that one of the components of the test

is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the

deprivation alleged must be, objectively, 'sufficiently serious': a prison official's act or

omission must result in the denial of minimal civilized measure of life's necessities."

Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants

"exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F.App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009) (quoting Domino v. Tex, Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

The Supreme Court has recently reaffirmed that "deliberate indifference"

is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded and explained by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Monterroso must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Even assuming without concluding that the medical conditions that Monterroso described presented serious medical needs that posed a substantial risk of harm for purposes of constitutional analysis, plaintiff has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by his medical records, shows that he received constitutionally adequate, even extensive, medical care while incarcerated at JPCC. Monterroso testified that he was examined and treated by

doctors and nurses at the jail, received surgery for his leg injuries, regularly received medication, saw a specialist for his ruptured eardrum and thereafter received intensive treatment and medication, some provided on a daily basis.

The record supports absolutely no inference that defendants were deliberately indifferent to plaintiff's medical needs in the constitutional sense. See, e.g., Fuller v. Harris Cnty, 294 Fed. App'x. 167, 169, 2008 WL 4411390, at *1 (5th Cir. 2008) (refusing to find deliberate indifference when "medical records show that [the plaintiff] was seen numerous times in the jail's infirmary following his surgery, and that his post-surgical infection was both noted and treated with antibiotics"); Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (Plaintiff failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed); Johnson v. City of Centreville, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed. App'x 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when plaintiff was seen at hospital and discharged after receiving treatment for his injuries).

Although Monterroso has alleged delay in receiving medical care, particularly in connection with his desire to see a specialist for his eardrum problem, in that he did not immediately receive the treatment he thought was necessary, and he has expressed dissatisfaction with the overall speed and quality of treatment, none of his allegations rise

to the level of deliberate indifference necessary to establish a constitutional violation

cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic
> example of a matter for medical judgment. A showing of deliberate
> indifference requires the prisoner to submit evidence that prison officials
> refused to treat him, ignored his complaints, intentionally treated him
> incorrectly, or engaged in any similar conduct that would clearly evince a
> wanton disregard for any serious medical needs. Deliberate indifference is an
> extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted). No such

showing has been made on the current record. In fact, Monterroso testified and his medical

records confirm that he had regular doctor and nurse visits, surgery for his leg injury,

regular medication, and a visit to a specialist for his ruptured eardrum. Monterroso

complains chiefly that JPCC's delay in securing his visit to a specialist resulted in

permanent partial loss of hearing.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter

v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v.

Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at

a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S.

at 298. No such showing can be made in this case in light of the extensive medical care

Monterroso received during his pre-trial incarceration. Contentions like Monterroso's that

amount to a mere disagreement with the speed, quality or extent of medical treatment or

even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical

treatment may, at a certain point, rise to the level of a constitutional violation, malpractice

or negligent care does not." <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does <u>not</u> constitute deliberate indifference, even if treatment was negligently administered); <u>see</u> <u>also</u> <u>Rowe v. Norris</u>, 198 Fed. App'x 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); <u>Marksbery v. O'Dea</u>, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); <u>Mendoza</u>, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services cannot support a Section 1983 claim); <u>Wesson</u>, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

For example, in <u>McBarron v. Federal Bureau of Prisons</u>, 332 Fed. App'x 961, 2009 WL 1659221 (5th Cir. 2009), a federal prisoner complained that he had not been provided with surgery. Applying the same constitutional standards applicable under Section 1983, including its <u>Stewart</u> decision cited above, the Fifth Circuit affirmed the district court's dismissal of the prisoner's medical care claim. The court ruled that a mere "difference of opinion as to the course of treatment . . . does not constitute deliberate indifference." <u>Id.</u> at 964, *1. "[Plaintiff] may not have received all the treatment that he desired as quickly as he wanted, but . . . he was not ignored, . . . he was given pain medication, and . . . surgery was approved once it became medically necessary. No showing of deliberate indifference

is made." Id. (citing Domino, 239 F.3d at 756 (deliberate indifference requires an inmate to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard of any serious medical needs")).

Plaintiff's complaint in this case about his medical care for his various conditions fails to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish deliberate indifference under the applicable constitutional standard. For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

III.    FAILURE TO PROTECT FROM ATTACK BY OTHER INMATES

Monterroso's claim concerning the attacks by other inmates implicates defendants' constitutional obligation to protect prisoners from harm.

Monterroso was a pretrial detainee at the time of the September 3, 2017 and February 21, 2018 incidents on which he bases this claim. In Hare, 74 F.3d at 650, the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement." Thus, regardless of whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate

23

to being harmed by another inmate, such as those alleged by Monterroso in this case. Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650.

Here, nothing more than episodic acts or omissions of jail officials have been alleged. For the following reasons, plaintiff fails to state a claim of violation of his constitutional rights cognizable under Section 1983 in the particular circumstances of this claim.

Prison officials have a duty to protect inmates from harm or violence by other inmates and to take reasonable measures to protect their safety. Farmer , 511 U.S. at 832-33; Williams v. Hampton, 797 F.3d 276, 280 (5th Cir. 2015). The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 834; Williams, 797 F.3d at 281; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998). The standard for deliberate indifference is the same as that articulated above; i.e., defendants must actually know that a substantial risk of serious harm exists and then intentionally disregard that risk.

In this case, Monterroso fails to allege facts sufficient to establish that any possible defendant possessed a culpable state of mind sufficient to establish deliberate indifference. As to the September 2017 incident, plaintiff's testimony and written submissions confirm that he had no conflict with the inmates who attacked him before or after the incident and that he never advised any jail official that he felt threatened or had been attacked in the past

by those inmates. While he initially wrote that JPCC guard Dixon knew of the risk of attack

beforehand, his <u>Spears</u> testimony explaining this allegation confirms that she merely heard

what was happening shortly beforehand but did not intervene immediately because she was

outnumbered and felt threatened; so she called for backup. Plaintiff testified that Dixon

called for backup upon seeing the fight, and that other guards arrived minutes later.

As to the February 2018 incident, plaintiff specifically alleges that other inmates

attempted to extort $5 from him and other Hispanic prisoners. Record Doc. No. 1 at p. 12.

He wrote, "the authority took some actions and removed such people from the dormitory

3C-R. Some inmates . . . received orders from the removed inmates: to attack me . . . ."

Thus, plaintiff's allegations indicate that defendants took corrective action concerning the

risk of which they were aware. There is no indication that defendants knew about the

"orders from the removed inmates" to attack plaintiff. The written allegations describe the

February attack as a sudden and surprise incident in which plaintiff "was in the dormitory

3C-R . . . I was put on my head an (sic) laundry bag. So I do not see them, when the three

inmates striked (sic) me." Plaintiff further alleged that "[o]n June 26, 2018, I wrote a

grievance, because the inmate that have attacked me on Feb[ruary] 21, -18, he have been

sent to the same area that I am located. . . . I did not have appeal or completed all steps in

the procedure because [for] my own safety, <u>I did not want</u> [reprisals] or <u>to be sent</u> to

segregation [protective custody] and becuase where I am actually I am <u>in peace</u>."

In these circumstances, it cannot be concluded that any JPCC deputy deliberately

exposed Monterroso to a substantial and known risk of serious harm in the constitutional

sense. See LeBlanc v. La. State Penitentiary, 2015 WL 5011984, at *3 (M.D. La. July 28, 2015) report & recommendation adopted, 2015 WL 5025242 (M.D. La. Aug. 24, 2015) (no deliberate indifference to prisoner's safety when plaintiff did not assert that he and fellow inmate who attacked him had had any prior conflict, that fellow inmate had previously threatened to cause plaintiff harm, that plaintiff had complained to defendant prior to the attack that he was in fear for his safety from fellow inmate, or that defendant had any reason to anticipate that fellow inmate would attack plaintiff without warning); Taylor v. Louisiana, 2012 WL 6606961, at *3 (E.D. La. July 10, 2012), report & recommendation adopted, 2012 WL 6600553 (E.D. La. Dec. 18, 2012) (Defendant cannot "have been deliberately indifferent in failing to protect against a potential harm of which she was unaware" when plaintiff "testified that no threats were made prior to the attack and that he had no previous problems, arguments, or altercations with the inmates who attacked him. Not even plaintiff himself, much less [defendant], had advance warning of the attack.").

Because Monterroso has failed to allege the requisite elements of deliberate indifference and cannot state a cognizable Section 1983 claim for failure to protect him from a known risk of harm, his failure to protect claim should be dismissed.

## IV.    OUTGOING MAIL

Monterroso complains that defendants tampered with his mail by failing to transmit certain letters to this court, to the Guatemalan consulate and to his lawyer. The United States Supreme Court and Fifth Circuit Court of Appeals have held that prison practices or restrictions concerning prisoner mail implicate two distinct but intertwined constitutional

rights: (1) the right of access to the courts, which the Supreme Court has indicated lies in both the Due Process Clause and the First Amendment, Wolff v. McDonnell, 418 U.S. 539, 575-76 (1974); and (2) the right to freedom of speech guaranteed by the First Amendment. Walker v. Navarro Cnty. Jail, 4 F.3d 410, 413 (5th Cir. 1993); Brewer v. Wilkinson, 3 F.3d 816, 820 (5th Cir. 1993). Specifically, the right of access to the courts is implicated only when the mail is legal in nature, while the right to free speech is relevant to claims involving both legal and non-legal mail. See generally Brewer, 3 F.3d 816.

Regardless what rights are implicated, however, it is clear that prisoners' constitutional rights with respect to mail are not absolute. A prison practice or regulation may permissibly interfere with an inmate's mail, including his legal mail, if the practice is "reasonably related to a legitimate penological interest." Morgan v. Quarterman, 570 F.3d 663, 666 (5th Cir. 2009) (quotation omitted) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)); see Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989) (reasonableness standard applies to challenges to regulations as well as to actions of a prison official).

To the extent that Monterroso is complaining that defendants' alleged tampering with his legal mail interfered with his constitutional right of access to the courts, it is well established that prisoners have such a constitutional right. Bounds v. Smith, 430 U.S. 817, 821 (1977). Under the First Amendment, prisoners have the right to a "reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." Lewis v. Casey, 518 U.S. 343, 356 (1996) (emphasis added). Although "the precise contours of a prisoner's right of access to the courts remains somewhat

obscure, the Supreme Court has <u>not</u> extended this right to encompass more than the <u>ability of an inmate to prepare and transmit a necessary legal document to a court</u>." <u>Vaccaro v. United States</u>, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); <u>accord</u> <u>Manning v. Sumlin</u>, 540 F. App'x 462, 463 (5th Cir. 2013) (citing <u>Lewis</u>, 518 U.S. at 356; <u>Brewer</u>, 3 F.3d at 821).

An inmate's right of access to the courts may be violated when a prison official tampers or interferes with his legal mail. <u>Brewer</u>, 3 F.3d at 820. However, to state a claim that his constitutional right of access to the courts was violated by defendants, Monterroso must demonstrate that <u>his position as a litigant was actually prejudiced</u>. <u>Lewis</u>, 518 U.S. at 348; <u>Every v. Jindal</u>, 413 F. App'x 725, 727 (5th Cir. 2011) (citing <u>Lewis</u>, 518 U.S. at 349-50); <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999)); <u>Cochran v. Baldwin</u>, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328 (5th Cir. 1996). Specifically, Monterroso must show that defendants' alleged tampering with his legal mail "hindered his efforts to pursue a legal claim." <u>Lewis</u>, 518 U.S. at 351.

In this case, Monterroso's written submissions, even as expanded upon by his <u>Spears</u> testimony, fail to state a cognizable Section 1983 claim for violation of his right of access to the courts. The record reflects that Monterroso has been prolific in his fillings in this civil matter, and nothing in the record suggests that Monterroso has had difficulty with or been prevented from filing, either in this court or in his state court proceedings. Under the Fifth Circuit's interpretation of Supreme Court precedent, Monterroso's right of access to the courts extends only to his ability to prepare and transmit necessary legal documents to

a court. <u>Brewer</u>, 3 F.3d at 821. His criminal proceedings in the state court, where he is represented by counsel, are ongoing. In the context of other kinds of First Amendment claims, courts have held that an inmate's representation by counsel in his criminal proceedings is alone sufficient to afford him adequate access to the courts. <u>See</u> <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1291 (11th Cir. 1998) (to establish actual injury necessary to state a claim of denial of access to the courts, plaintiff must show defendants' action or policy actually hindered his ability to present a legal claim); <u>Mackin v. Carpenter</u>, 988 F.2d 1212, 1993 WL 82306, at *1 (5th Cir. 1993) (plaintiff must show he was denied meaningful access to courts as a result of defendants' action; "[s]ince [plaintiff] was represented by counsel . . ., he was not denied access to the courts."); <u>Mann v. Smith</u>, 796 F.2d 79, 83 (5th Cir. 1986) (access to court-appointed attorney in criminal case sufficient to satisfy First Amendment right of access to courts). The record does not show that his ability to prepare and submit legal mail, either to this court or the state court, was prejudicially impeded in any way by defendants' handling of his mail.

Additionally, Monterroso fails to show that defendants' alleged tampering with his legal mail prejudiced his position as a litigant, as required by <u>Lewis</u> and its progeny. This claim, along with the other claims he presents in this case, are legally frivolous and otherwise fail to state a claim for which relief can be granted. If his claims in this case are dismissed, it is <u>not</u> because he has been prejudiced in his position as a litigant by any mail tampering. Accordingly, to the extent Monterroso claims that defendants' tampering with his legal mail interfered with his access to the courts, his claim is legally frivolous and does

not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

As to Monterroso's free speech rights, "'[a] prison official's interference with a prisoner's legal mail . . . may violate the prisoner's First Amendment right to free speech - i.e., the right to be free from unjustified governmental interference with communication." Damm v. Cooper, 288 F. App'x 130, 132 (5th Cir. 2008) (quoting Brewer, 3 F.3d at 820). However, the Fifth Circuit has recognized a legitimate penological need for prison "personnel to open, review, and occasionally censor outgoing mail" because of concerns about possible threats to prison security, including ensuring that the mail does not contain contraband. Franco v. Collins, 2015 WL 136544, at *1 (S.D. Tex. Jan. 8, 2015) (citing Busby, 359 F.3d at 721); McCartney v. Keith, 2014 WL 5092017, at *2 (W.D. La. Oct. 9, 2014) (citing Busby, 359 F.3d at 721). As stated above, the record reflects no interference with the submission of Monterroso's legal mail to this court or the state court. Monterroso successfully communicated with the court by submitting numerous legal documents via mail from his prison address, which were received by this court without issue.

Monterroso also complains that defendants tampered with his non-legal mail that he sent to his lawyer and the Guatemalan consulate. He testified in his Spears hearing that he never received replies from either party. First Amendment liberties are implicated in the censorship of non-legal prisoner mail. Brewer, 3 F.3d at 821-22. When a prison practice involving prisoner mail–including non-legal mail–impinges on an inmate's constitutional

rights, such a practice is valid if it is "reasonably related to legitimate penological interests" Id. at 825.

However, to state a cognizable claim, a party must assert more than mere speculative and conclusory allegations. Instead, the standard is the same as the 12(b)(6) standard articulated in Huggins, 634 F.3d at 796. To the extent that Monterroso is complaining that defendants' alleged tampering with his non-legal mail interfered with his free speech rights under the First Amendment, Monterroso's written submissions and Spears testimony fail to state a cognizable Section 1983 claim for violation of his First Amendment rights. In his Spears testimony, Monterroso made purely speculative and conclusory accusations against defendants in regard to their alleged interference with his mail. When prompted to articulate why he believed his mail was not being submitted by defendants, plaintiff admitted that he did not know whether or not the mail was being sent, but would like a notification that it had been sent. The only support Monterroso could provide for his accusations was the fact that he had not received a response from his lawyer or the Guatemalan consulate, seemingly without considering the possibility that those parties may simply have no desire or need to respond to his letters.

For the foregoing reasons, plaintiff's legal and non-legal mail tampering claims are legally frivolous in all respects and do not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

V.    CRIMINAL PROCEEDINGS

Monterroso asserts a myriad of alleged constitutional deficiencies in his state court criminal proceedings. For example, he claims that he was not advised of his rights and was denied access to an attorney during questioning, that Detectives Alvarado and Goff and ADA Rish lied and used threats about his children to obtain his cooperation, and that at the time of his plea bargain negotiations his legal assistance was insufficient.

On February 19, 2019, Monterroso filed a supplement to his <u>Spears</u> testimony, Record Doc. Nos. 36; 37, in which he referenced a hearing that took place on February 8, 2019. <u>Id</u>. at p. 2. Staff of the undersigned magistrate judge inquired of the Louisiana 24th Judicial District Court, Division "H", and determined that: (1) the recent state court hearing was a pretrial evidentiary hearing; (2) plaintiff's criminal charges were still pending; and (3) the trial in that matter has not been set.

A.    <u>HECK BARS PLAINTIFF'S CLAIMS REGARDING HIS CRIMINAL PROCEEDINGS</u>

Monterroso's criminal charges of second degree murder are currently pending in the state court and arise from the very same incident on which he bases his civil claims regarding his criminal proceedings in this case. Regardless whether he seeks injunctive relief or damages under Section 1983 for these criminal proceedings, plaintiff's claim must be dismissed at this time under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

In <u>Heck</u>, the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state criminal charges or confinement, which has not been

reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

<u>Id.</u> at 486-87 (emphasis in original) (footnote omitted). Although the Supreme Court's decision in <u>Heck</u> concerned a civil action for monetary damages, the United States Court of Appeals for the Fifth Circuit has also applied <u>Heck</u> in cases where the plaintiff seeks injunctive relief. <u>Clarke v. Stalder</u>, 154 F.3d 186, 189 (5th Cir. 1998) (en banc) (citing <u>Edwards v. Balisok</u>, 520 U.S. 641, 117 S. Ct. 1584 (1997)).

Under <u>Heck</u>, plaintiff's Section 1983 claim in the instant case necessarily implies the invalidity of the pending state court murder charge against him, which has <u>not</u> been set aside. Plaintiff's Section 1983 claims concerning his criminal proceedings must fail because they necessarily impugn the validity of the criminal charge against him for second degree murder. Because the charge against Monterroso still stands and has not been set aside in any of the ways set out in <u>Heck</u>, his Section 1983 claims are effectively barred by <u>Heck</u>. Therefore, all of his claims based on the underlying prosecution against him, whether for

injunctive relief or for damages, are barred by Heck. As the Fifth Circuit has noted, the dismissal of plaintiff's Section 1983 claims is with prejudice to their being asserted again until the Heck conditions are met. Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996).

B.    PROSECUTORIAL IMMUNITY

Plaintiff appears to assert claims against the Jefferson Parish District Attorney and Assistant District Attorney Rish based solely upon their actions as prosecutors in connection with his state court criminal proceedings. To the extent that Monterroso asserts claims against these defendants in their individual capacities, they are immune from suit.

Courts employ a "functional" test to determine whether officials are entitled to absolute immunity, in which they look to the "nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 227-29 (1988); accord Hill v. City of Seven Points, 31 Fed. App'x 835, 2002 WL 243261, at *10 (5th Cir. 2002); Hulsey v. Owens,m 63 F.3d 354, 356 (5th Cir. 1995).

It is well established that prosecutors are immune from liability under Section 1983 for actions taken as an advocate in pursuit of a criminal prosecution. Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); Quinn v. Roach, 326 Fed. App'x 280, 2009 WL 1181072, at *9 (5th Cir. 2009); Hill, 2002 WL 243261, at *10. This immunity applies to a prosecutor's actions in "initiating prosecution and carrying [a] criminal case through the judicial process." Id. (quotation omitted); accord Buckley v. Fitzsimmons, 509 U.S. 259, 270, 272 (1993); Quinn, 2009 WL 1181072, at *9.

Thus, "[a] prosecutor enjoys absolute immunity from personal liability for damages under section 1983 for actions 'initiating a prosecution and . . . presenting the State's case' and those 'intimately associated with the judicial phase of the criminal process.'" Esteves v. Brock, 106 F.3d 674, 676 (5th Cir. 1997) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)); accord Quinn, 2009 WL 1181072, at *9; Hill, 2002 WL 243261, at *10. "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Kerr v. Lyford, 171 F.3d 330, 337 & n.10 (5th Cir. 1999), abrogated in part on other grounds by Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003) (quotation omitted); accord Champluvier v. Couch, 309 Fed. App'x. 902, 2009 WL 320829, at *1 (5th Cir. 2009); Hill, 2002 WL 243261, at *10.

In the instant case, the actions of the district attorney and assistants in his office concerning criminal charges against Monterroso in Jefferson Parish form the exclusive basis of plaintiff's claims against them. The district attorney's actions in initiating and pursuing Monterroso's prosecution and conviction fall well within the ambit of the judicial phase of the criminal process for which prosecutors are immune from liability. Plaintiff has failed to allege any actions in which the district attorney or his assistants were functioning outside the scope of prosecutorial immunity. Therefore, all damages claims against these defendants in their individual capacities must be dismissed.

However, while prosecutors enjoy absolute immunity from damages liability, they are not immune from Section 1983 suits seeking injunctive relief. Supreme Ct. v. Consumers Union of U.S., Inc., 446 U.S. 719, 736-37 (1980) (citing Gerstein v. Pugh, 420 U.S. 103 (1975)). In this case, Monterroso seeks primarily monetary relief concerning the charges against him, but he also seeks injunctive relief.

While the prosecutors are not immune from the injunctive relief sought in the complaint, all of plaintiff's claims against the district attorney and his assistants are subject to dismissal with prejudice as legally frivolous or for failure to state a claim for which relief can be granted under Heck for the same reasons stated above.

## VI.    BOOKS AND EDUCATIONAL OPPORTUNITES

Monterroso complains that he has not been provided with books or educational opportunities while incarcerated at JPCC. However, "a state has no constitutional obligation to provide basic educational or vocational training to prisoners." Beck v. Lynaugh, 842 F.2d 757, 762 (5th Cir. 1988) (citing Newman v. Alabama, 559 F.2d 283, 292 (5th Cir. 1977, rev'd in part on other grounds sub nom. Alabama v. Pugh, 438 U.S. 781 (1978)); accord Miles v. Windham Foti, 51 F.3d 1045, 1995 WL 153425, at *2 (5th Cir. 1995). Prisoners have no constitutional right to participate in educational, work release, rehabilitation or other self-improvement programs, particularly when no such programs exist at the facility. Joseph v. U.S. Fed. Bureau of Prisons, 232 F.3d 901, 2000 WL 1532783, at *1-2 (10th Cir. Oct. 16, 2000); Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992); Beck, 842 F.2d at 762; Oladipupo v. Austin, 104 F. Supp. 2d 626, 638 (W.D.

36

La. 2000). "Prisons are not educational institutions; there is no federal constitutional right to participate in a prison educational program." <u>Burnette v. Phelps</u>, 621 F. Supp. 1157, 1159 (M.D. La. 1985) (quoting <u>Newman</u>, 559 F.2d at 292).

Because Monterroso has no constitutional right to books or educational opportunities, he fails to state a claim on these grounds cognizable under Section 1983.

## <u>RECOMMENDATION</u>

For all of the foregoing reasons, it is **RECOMMENDED** that the motions to dismiss for failure to state a claim, Record Doc. Nos. 19 and 22, be **GRANTED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____29th_____ day of March, 2019.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.